We have counsel available for argument on the Dinsey matter as well, but I assume that counsel who are seated here at counsel table are counsel on the Chao v. Rays construction matter, so we'll move that by the next row. May it please the court. My name is Ron Gottlieb. I represent the Secretary of Labor. I would like to reserve two minutes for rebuttal. Thank you. This appeal involves two legal issues. The first is whether the Secretary followed an appropriate procedure in seeking review of an ALJ's order granting relief under Federal Rule of Civil Procedure 60B. If so, the commission erred in not considering the merits of the Secretary's appeal of that order. The second issue is whether Roy's should be denied relief under Rule 60B because it failed as a matter of law to seek that relief within a reasonable time. Mr. Gottlieb, to what degree should the merger rule here guide our analysis? Well, we think the court should apply the merger rule and find that the interlocutory— Why? What are your reasons for suggesting that? Because the vacature order never would have been entered had there not been an order granting 60B relief. The order granting 60B relief undid the finality and the enforceability of the order and required the parties to litigate the merits of the citation. The order that was subsequently entered for not litigating the merits of the citation was therefore—was based on that 60B order. In appealing the ALJ's determination to the commission, did the Secretary specify that part of that review it was—she was requesting was review of the Rule 60B determination? Yes, we made it clear that that was the basis of the appeal, that we wanted to get review of the 60B order because we thought it was legally erroneous. And that it was the basis for the vacature order. We thought the order—not only was the order legally erroneous, we thought it interfered with the Secretary's ability to enforce the act because not only did it divert resources in this case to proving the merits of citations that had already been established as a matter of law, the ALJ in its decision basically signaled to all employers operating in the Third Circuit at least that even if the employer inexcusably delayed in filing a late notice of contest, it would be able to contest the citation. So this would divert resources in numerous other cases in which employers filed late notices of contest. If the Secretary went ahead and litigated the merits of the citation and won and lawyers did not appeal, that Rule 60B order would be insulated from further review. So the Secretary thought that it was more important to get review of the 60B order than to litigate the merits of citations that she was convinced was already established as a matter of law. So she advised the ALJ of this fact that she did not want to litigate the merits of the citations and wanted review of the Rule 60B order. This is an appropriate way of seeking review of the 60B order. The dispositive dispute between the parties is whether lawyers had established sufficient grounds for undoing the finality and enforceability of commission orders. The procedure that the Secretary followed was indisputably the most efficient and economical way of resolving that dispute in having the parties – It wouldn't preclude determination on the merits. The merits issue was whether the orders were valid and enforceable. There wouldn't be a merits determination on the merits of the allegations of the citations because we waived our right to a hearing. We conceded that we wouldn't litigate the merits of the citations. That had happened at an earlier stage. Right. The merits of the citations, as a matter of – I mean the argument that you're precluding review on the merits, the response is that occurred at an earlier stage. The response is the lawyers forfeited its right to a hearing on the merits when it didn't contest the citations as within the time allowed and didn't establish grounds for undoing the finality. There's no valid public interest in having a hearing on the merits if, in fact, as the Secretary believes, lawyers did forfeit its right to a hearing. To the contrary, such a hearing would be contrary to the public interest because it would divert resources that the Secretary could use to enforce the Act in other circumstances. In fact, it would divert commission resources from having hearings – granting hearings to employees who had not forfeited. Mr. Galli, let me return you to the merger rule because I'm particularly concerned or unsure really of your basis for urging it on us. Is it your position that the merger rule is binding on the commission? Well, they have said that they follow the final judgment rule and that they only really want to look at ALJ decisions until they become final. The final judgment rule is not as binding on the commission as it is on the Court of Appeals perhaps. They could theoretically say we're going to review – they would have greater authority perhaps to review non-final orders than the Court of Appeals does. But they have said that they do follow it, so it was binding in the sense that it was their precedent to consider issues. You've discussed in your brief LTV Steele, for example, and LTV Steele doesn't anywhere really discuss the merger rule, does it? LTV Steele? I'm not sure. Which case is that? You've cited it. I must have cited it. I must know by name. I mean, the merger rule – I mean, there was a final disposition in this case vacating the citations, and we considered the merger rule applicable because when you seek review of the final decision, all interlocutory decisions that preceded it to the extent that they're relevant to the disposition are included in the appeal. Let's say that we determine that the merger rule is not binding on the commission. Does this case become simply a question of whether the commission deviated from its own precedent or its own decisions? Well, that would be – if the merger rule was not binding, I think that would be an additional reason why the commission had to review the interlocutory order. One, because their precedent has indicated that it does, and two, because there would be no impediment to the commission reviewing the merits of interlocutory orders. The commission precedent up until this case has always reviewed the merits of 60B orders when the secretary indicated that it would not litigate the merits of the citations. Always? Yes. In every case that I've come across, neither the secretary nor Lloyds has ever pointed to a case in which the commission did not do so. Is the merger rule dependent upon the nature of the vacatur? In other words, if the vacatur was a sanction for disobeying an order of the commission, is that a different situation than if the vacatur is simply pursuant to the secretary's concession that it won't contest the charges? If the secretary's conduct was independently sanctionable and his vacatur order was entered for that reason, that would be an exception to the merger rule. And the commission has indicated that it would apply that type of exception to its review of the final orders. But the commission has made clear that simply disobeying an ALJ's order because of a good faith disagreement as to its legality, whether it was properly entered, is not independently sanctionable. So that's additional precedent that it didn't follow, and it provided no reason or explanation for not following. And the secretary did consistently explain that she was seeking a final order, not through contempt of the order to file a complaint, but just to facilitate review of the order. In writing, on two occasions she said that was the purpose of why she wasn't pursuing the litigation, and it was unmistakably clear that that's what the ALJ understood, and it's even more clear that that's what the commission understood. And in fact, you know, the commission gave three reasons for not following its precedent, and none of these are valid under any reasonable standard of review. It first said, well, none of the prior cases affirmatively said that this procedure was appropriate. But this doesn't – can't obscure the fact that it, as I said, it always reviewed the merits of the secretary's appellate arguments when she followed this procedure. And it, in fact, granted the secretary relief when it found that the secretary's appellate arguments had merit. The secretary plainly was entitled to rely on his consistent practice in deciding which of her procedural options to follow in order to establish that the orders were final and enforceable as they were issued. The commission then said, well, in one of the prior cases, the secretary could have sought interlocutory – Did any of these cases, though, before the commission, upon which you rely, actually state reasons? Did they actually provide some kind of reasoning or justification for permitting the secretary to refuse to file a complaint? I don't recall any reasons in the 60B context as opposed – they just reviewed the merits of the arguments and then accorded relief in accordance with how it determined the appellate arguments. In the discovery context, it did give some reasons and basically said, well, if there's not consummation conduct aside from disobeying the order, we have a responsibility to ensure that the ALJ has decided the matter correctly. And that responsibility outweighed the interest in ensuring compliance with the ALJ's orders. Brosh was the one that has the most extended discussion on that. Brosh was the discovery case. That's right. That was the discovery case. As we pointed out, there's no principle distinction between discovery cases and, well, 60B orders. There isn't? I realize that one circuit has said that, but we haven't said that. No, you have not said that. We don't think that – Isn't there a case to be made that the legal issues at stake in discovery disputes can actually be more weighty than those that are at stake in an excusable neglect case? I don't think so, at least not when the Secretary agrees to waive the litigation on the merits. Because in that case, the appeal is going to conclusively establish the party's rights and obligations under the commission orders. And that's – so the Secretary's assured finality and is assured that the appeal is going to resolve the party's rights and obligations under commission orders under the citations. Whereas in the discovery, you're going to just resolve the discovery matter, and there's going to be additional litigation after the discovery appeal is decided. Mr. Gottlieb, you've argued by analogy to our Bethel opinion. How does Bethel help you here? Because Bethel involved in a procedure similar to what we followed here. In Bethel, the plaintiff had won a judgment. The judgment actually had been affirmed on appeal, and then a new trial order had been entered under Rule 60B. And the plaintiff said, well, we don't want to proceed under retrial. We want to stake all on the fact that the original judgment should have been left in place. And we're saying that the citations that became final when they failed to contest is equivalent to a judgment – to the judgment that the plaintiff's evidence had obtained in that case. And that we were allowed to not litigate – not to engage in a new trial to reestablish the merits and the enforceability of the citations. And the court said that's an appropriate procedure. There's no reason to sanction a party for not wanting to proceed on a second trial when he's already obtained a verdict in his favor and is willing to stake all on that appeal. Mr. Gottlieb, did you reserve time on rebuttal? I did reserve time, so – Thank you. We'll have you back on rebuttal then. Turn to Mr. Russell. Good morning, Your Honors, and may it please the Court. My name is Steve Russell. I'm with the firm of Moore, Dodson & Russell, and I represent the respondent, Roy's Construction, Inc. For the points I don't reach in my argument, I would ask that my briefs be considered on them. Your Honors, the Secretary's vehicle for premising appellate jurisdiction here is an October 13, 2005, vacator order. And it's – the nature of that order was very clearly a sanction. How so? There's no language suggesting a sanction, is there? Well, the Secretary was – did write to the ALJ and indicated that they did want a final order. But the Secretary actually was pretty careful to avoid any language suggestive of contumacious behavior, wasn't she? Your Honor, what she – I think what's more important is what she did not do. In her briefs, she indicates, I was asking for a voluntary dismissal because I think the Secretary was concerned about the fact of a sanctions order. But what the ALJ did here was enter a sanctions order under Commission Rule 101A. And 101A actually – the heading is sanctions, isn't it? It is, and the procedure is the issuance of a rule to show cause. So, Your Honor, there was no mistake, and the Secretary knew what was coming down the pike when it refused to respond to the rule to show cause. Your Honor, the – surely the vacator order was final, and the Secretary could and did appeal it. But the issue that the Commission directed review was, please tell us how the ALJ committed error by entering the vacator order. Her response was, I asked for it. She properly rendered it. And she comes before this court, Your Honor, in exactly the same posture. That is – But did she not at the same time say, I would like review of the 60B orders? She certainly did, Your Honor, but I think that the Commission, which does apply the merger doctrine, as far as I can tell, the way this court does, and does apply the finality rule the way that this court does, said, well, look, if you can't show us why the vacator order was error, this case is over. If the citations are vacated and they were done so properly, why should we go any further? Because she is saying there is an earlier order that was an error that needs to be reviewed. And she, in fact, asked for that review. Well, Your Honor, according to Commission precedent, and certainly before this court, she had three options available to her. One, she could have followed the order, and we would have had perhaps a one-day hearing on the merits, which of course is the preferred method. Secondly, she's – No, why? Why is that the preferred method? When the Secretary isn't interested in spending money to reassert her position on the merits, the thing that concerns her in this case is the 60B order, which she feels is something that is very – is wrong, in her opinion, and must be corrected. And what is the most efficient way to correct that? Didn't she pick the most efficient way to correct that? It may, from the Secretary's position, have been the most efficient, but was it the appropriate course? What do you mean by appropriate? The appropriate course, Your Honor, is that both the Commission and this court prefer hearings on the merits. But why? She's conceded the merits. She says, I'm not interested in the merits. There is an issue here which I feel is error and needs – which is important to me and needs to be clarified, and I am willing for the sake of finality to concede the merits. Your client is not hurt one little bit. They're her citations, for heaven's sakes. If she doesn't care about them anymore, or at least care about the merits, why can't she do exactly as Judge Roth has suggested? Well, Your Honor, because her concession, if you look very closely at it, really isn't much of a concession. That is, the Secretary very carefully tries to posture this case on appeal to mirror the Bethel opinion. And she's saying, okay, because of this concession that I'm going to make, whatever happens at the Court of Appeals, I'll live or die with. There's nothing more – and this is the point for the finality rule. There's nothing more for the District – not the District Court – for the Commission to do in this case. Whatever Your Honor's decide, that's going to be it. The problem with that is if you look at footnote – and we were a bit interested as to exactly what the Secretary was asking for for relief. If you look at footnote 8 on her reply brief, she suddenly realizes – well, probably not suddenly, but the merits of the 60B1 interlocutory decision that the Secretary is so concerned about are not before you on appeal. Right, because they've already been determined by the inspector. They've been determined by the ALJ, but if you look – No, no, no, no. They've been determined by the inspector. The ALJ then considered the timeliness of the contest, right? Well, that is correct, Your Honor, and maybe I misspoke. The thing that concerns the Secretary and what the Secretary wants a ruling on, she wants a reversal on the merits of the 60B1 decision that Judge Summers made. She doesn't like that precedent out there. Right, absolutely. Now, what she's asking for for relief in footnote 8 is not that you decide the merits of the 60B1 decision because it's not before you. She's asking for you to relieve her from the vacator order that she deliberately asked for and engineered, number one, because she can get no relief, no relief whatsoever unless you lift that order. And secondly, she's asking you to remand the commission. Now, if she does that and the commission decides – and if you look at Judge Summers' opinion, it was – it applied George Harms. It applied Pioneer. It went right down the line applying Third Circuit case law, and I submit to the court, the commission will, if it is considered on remand, uphold it. Maybe it will, but, I mean, should it not have done – the 60B, should it not have done that in the first place when she is asking for that relief? But, Your Honor, where I'm going with this argument is the court – this court needs to be concerned about the finality doctrine. And if you are being asked to remand to the tribunal below, there's other things that need to be done. Right, because the tribunal below did not do something that it was asked to do, and that does not make the original order not final. It simply would be our remand to the commission to say the secretary had a final order. She asked for your review of this particular aspect of the case. You didn't do it. It's back to you. Please do it now. Well, Your Honor, you would be, by doing that, asking the commission to ignore the exception to the merger doctrine that I think this court – No, I wouldn't. I would simply be saying the merger doctrine applies. Why didn't you do this? You ought to do it now. And I would suggest that the response to that question, Your Honor, would be the same thing that I'm submitting to the court now. This is a sanctions order. This wasn't a voluntary dismissal. This wasn't a motion in limine that gutted something of the secretary's case. This wasn't a motion for partial summary judgment that gutted something of the secretary's case. As interlocutory issues go, as Judge Smith indicated, this is not such a biggie. And for the secretary or any party in any tribunal below to disobey a trial judge's, if you will, ruling as a vehicle to manufacture jurisdiction – Well, she wasn't really disobeying. She was saying to the ALJ, this is the way I want to proceed. I want a final order. And certainly in this court it is not unusual for us to get appeals where we say, hey, hey, hey, wait. This is not a final order because something can continue. And we say – we send a – or we notify the district judge, you need a ruling on these issues X, Y, and Z in order to have a final order that we can consider. And sometimes that involves exactly what the secretary did here, saying I will no longer contest the citations if you decide against me. I will concede that. And that to me is a not at all unusual way to proceed to get appellate jurisdiction of an important issue when you are not particularly interested in the implications of the final order. You're more interested in the implications of the interlocutory order, and you need a vehicle to make that reviewable. Your Honor, a couple of points there. The thing about – and that is where this court's opinion in Marshall v. Seloff telling litigants you cannot ignore trial judge's orders and expect to get up here and have us hear your interlocutory issues. And Bethel, which is a very, very unique circumstance. That to me is not relevant to what I have been saying about getting final orders in order to achieve a situation where you can have review of an interlocutory order. Well, Your Honor, I understand this court's precedent to be very clear that the only way we're going to let you do that, litigant, is if you are prepared to waive the consequences of the final order you have engineered to get here. Right. Now, that's what Mr. Bethel did. Okay? That is not what the secretary's doing. Yes, it is. No, Your Honor, I suggest not. No. The only way that the secretary's case could be analogous to Bethel is if the secretary said, okay, I deliberately asked for and received an order vacating the citations, vacated them. And I, as Mr. Bethel did before the panel on the Third Circuit, says I'm willing to live with that. I'm willing to live with that. Please decide my interlocutory issue, but I am not going after Royce for a dime. That's not what the secretary's asking. That's why Bethel is very, very different from what you have here. The secretary must obtain a reversal of the vacator order to obtain any relief in this case. Your Honors, the— And then, Your Honor, she wants to enforce what is, frankly, a default judgment against Royce. But she really isn't that interested, my understanding, in enforcing that if she can get a ruling which would then be applicable to any secretary of labor proceedings, any OSHA determinations in the Third Circuit of the amount of time in which a notice of contest can be given if the petitioner or if the business that got cited says we didn't receive notice immediately, how do you determine after that what is a reasonable time? And I think that's what she's interested in. I don't think she really cares what happens with Royce or doesn't happen with Royce. Your Honor, I think that you need to ask that question of counsel on rebuttal because my understanding is what the secretary in a perfect world would have is, Your Honor, setting aside the very vacator order that they asked for without any real basis for doing it. They then would like to have you remand back to the lower tribunal for a determination of the commission on the merits of the 60B1. Finality? No, Your Honors. It's not finality. And third, they would like then to prevail before the commission that it was not, that the 60B1 ruling was erroneous. And then they want to come after my client for some $45,000. Now, if they really, really want to make the concession that the Bethel plaintiff made, they need to come before this court and say, we're willing to live with the order we engineered. The vacator order, please don't set it aside. And, Your Honors, I don't believe you're going to hear that. And if you do hear it, what the secretary is then asking you to do is render an advisory opinion. This wasn't the dismissal of the case as a sanction. This was a vacation of the citations. So there's no underlying basis for the case. There are no merits for it anymore. And that's where we think that this case, while very, very cleverly played by the secretary, truly would erode this court's decisions between the Marshall v. Saloff opinion and Bethel carving out a very narrow exception for it. This isn't a Bethel scenario. Looks like it, but is not. And for those reasons, Your Honors, we would ask that the decision of the commission be affirmed and that this court deny any appellate review over interlocutory issues because this is a sanctions order, and that is a well carved out exception to the merger doctrine. Thank you, Your Honors. Thank you. Mr. Gottlieb. Thank you, Your Honor. With regard to whether it was a sanction order, I just want to point out that neither the commission nor the ALJ referred to 101 until the commission decision itself. But even if it was considered as a sanction order, the commission president makes clear that the invalidity of the interlocutory order is a good cause for lifting the sanction. And that's what we think that they had to do. The plaintiff in Bethel didn't waive his right to enforce the judgment that he had obtained in the first phase of the proceedings. And that's what we're saying. We don't have to waive the fact that we had obtained a valid enforceable judgment in the first phase of the proceedings, which ended when Roys did not timely seek relief. The court made clear in Bethel that reversal of the order that the new trial order would have meant that – I mean reversal of the 60B order would have meant that the new trial order was a nullity. And that's what we're saying would happen if you find that the 60B order was improperly entered. The vacature order would be a nullity. Whether the commission actually had to formally reverse that order or just say 60B relief was improperly granted, the citation to a final order enforceable as such, I think it's – as a better practice, it would be better to formally list – say that the vacature order is null and void just as the new trial order would have been null and void in Bethel. But we were entitled to retain our rights under the initial judgment, and that's what we didn't have to concede. Regarding whether this was a motion for voluntary dismissal, we didn't dismiss the case. There was no case. There was only a notice of contest and arguably the citations. We didn't – a dismissal – an order just dismissing the case would have made very little sense in the procedural posture in which this case arose because we had not yet filed the complaint, and a dismissal would have said, well, what are we dismissing? Are we dismissing the notice of contest? What's going on?